HELEN FROEHLICH, Plaintiff, *v.* K. W. W. HOLDING Co., INC., Defendant.

(Supreme Court, Kings Special Term for Trials, July, 1921.)

Specific performance — land contract — when specific performance will not be refused — housing legislation — Laws of. 1920, chaps. 942–953.

> Specific performance will not be refused for a cause which would not be an excuse for non-performance in an action at law.
> Specific performance of a land contract will not be refused because of difficulty or even hardship arising from changed conditions or events subsequently occurring which should have been in contemplation of the parties as possible contingencies.
> A contract to convey an apartment house in the city of New York, free and clear of all incumbrances except as stated in the contract, was made " subject to the rights of present tenants

by lease or otherwise, no lease extending beyond October 1, 1920." At the request of the vendee the closing of title was, on July 15, 1920, adjourned for three months by a stipulation which required the vendor, unless the apartments should be vacated, to enter into leases with the present or new tenants for terms not exceeding one year from October 1, 1920, at rentals in his discretion but which should total not less than a certain sum a year. The contract also contained the following: " No present existing objections to title shall be considered cause for failure to take title." *Held,* that upon the vendee's refusal to take title because of the housing legislation (Laws of 1920, chaps. 942–953, in effect September 27, 1920) the vendor was entitled to maintain an action to compel specific performance of the contract.

ACTION for specific performance.

Richards, Smyth & Conway (Albert Conway, of counsel), for plaintiff.

Grover M. Moscowitz, for defendant.

CROPSEY, J. The seller under a contract for the sale of real property seeks specific performance of it. It is conceded that the plaintiff is entitled to the relief sought unless the housing legislation passed in September last (Laws of 1920, chaps. 942–953) makes it inequitable to so decree. The property affected is an apartment house located in the borough of Brooklyn and contains sixteen or seventeen apartments. The contract was dated March 15, 1920, and by its terms was to close July 15, 1920. The contract contained the provision " subject to the rights of present tenants by lease or otherwise, no lease extending beyond October 1, 1920." It also required the plaintiff to convey free of all incumbrances except those stated in the contract. At the request of the defendant the closing of title was adjourned on July 15 to October 15, 1920. The stipulation of adjournment required the plaintiff, unless the apartments should

be vacated, to enter into leases with the present or new tenants for terms not exceeding one year, from October 1, 1920, at rentals in the discretion of the plaintiff, but which should total not less than $10,627 a year. It also provided that the failure by the defendant to take title on the adjourned date should work a forfeiture of the deposit made and release the plaintiff from liability under the contract. It also contained the following: " No present existing objections to title shall be considered cause for failure to take title."

At the time the contract was signed no legislation had been passed dealing with the housing situation, but at that time and for a considerable period prior there had been discussion of the question and public hearings had by legislative committee. The first enactments became law April 1, 1920. They are chapters 131 to 139, Laws of 1920. The latter enactments were passed at the extraordinary session and became laws on September 27, 1920.

The remedy of specific performance is said to rest in a sound judicial discretion, but Pomeroy says to assert that the granting of relief is discretionary is " misleading and inaccurate." The remedy is really governed by the same rules as all other equitable remedies. When the conditions and elements exist which call for the application of this remedy, it is administered in equity as freely as a judgment for damages is awarded at law. See 4 Pom. Eq. Juris. (1919 ed.) § 1404. There are some exceptional cases in which equity has withheld this remedy, but as a general rule specific performance will not be refused for a cause which would not be an excuse for nonperformance in an action at law. The right of parties to contract involves a liability from so doing. And the mere fact that the obligation may be onerous or

even more burdensome than was contemplated does not relieve a party. Having signed a contract, the party must perform or become liable in damages. " If the parties have made no provision for a dispensation, the law gives none." 6 R. C. L. 997, § 364. See to same effect *Beebe* v. *Johnson,* 19 Wend. 500, 502; *Wheeler* v. *Connecticut Mutual Life Ins. Co.,* 82 N. Y. 543, 550; *Richards & Co., Inc.,* v. *Wreschner,* 174 App. Div. 484, 487. There are exceptions to the above rule. But they arise only where the performance of the contract is rendered impossible by the act of God, the law, or the other party. *Cobb* v. *Harmon,* 23 N. Y. 148, 150; *Cameron-Hawn Realty Co.* v. *City of Albany,* 207 id. 377, 381; *Dermott* v. *Jones,* 2 Wall. 1, 7; *Carnegie Steel Co.* v. *United States,* 240 U. S. 156, 165; *People* v. *Bartlett,* 3 Hill, 570. For further instances where performance has been rendered impossible by act of law, see *People* v. *Globe Mutual Life Insurance Co.,* 91 N. Y. 174, 179; *Buffalo E. S. R. Co.* v. *Buffalo S. R. Co.,* 111 id. 132, 139; *Lorillard* v. *Clyde,* 142 id. 456, 462; *Jones* v. *Judd,* 4 id. 411, 414; *Labaree* v. *Crossman,* 100 App. Div. 499; affd., 184 N. Y. 586. And it is a natural sequence, from the general rule relating to performance, that equity will not refuse to decree it because of difficulties or even hardships arising from changed conditions or subsequent events " where these should have been in contemplation of the parties as possible contingencies when they entered upon the agreement." Equity measures the difficulties of the contract as of its date and not by subsequent events. 5 Pom. Eq. Juris. (1919 ed.) § 2219. See, also, *Prospect Park & C. I. R. R. Co.* v. *Coney Island & B. R. R. Co.,* 144 N. Y. 152, 159, 162; *Marble Co.* v. *Ripley,* 10 Wall. 339, 356, 357; *Franklin Telegraph Co.* v. *Harrison,* 145 U. S. 459, 471–473.

The housing laws (Laws of 1920, chaps. 942–953) have been declared to be constitutional. *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429. None of the enactments makes the contract between the plaintiff and defendant impossible of performance, nor is the marketability of the title in any way impaired. The most that can be said is, that these acts work changes in, or postponements of, the possessory remedies existing when the contract between the parties was executed. But the continuance of existing remedies is not a guaranteed incident of the ownership of real property. A landlord has no vested right in any particular form of remedy. All contracts are presumed to be executed with reference to existing laws '' and subject to such modification, in respect to the remedies of the parties, as may result from subsequent legislation, if free from constitutional objection.'' *Blauvelt* v. *Woodworth*, 31 N. Y. 285, 287. See, also, *Stocking* v. *Hunt,* 3 Den. 274; *Van Rensselaer* v. *Snyder,* 13 N. Y. 299, 304, 305; *Conkey* v. *Hart,* 14 id. 22, 29.

While none of the housing legislation had actually been enacted when this contract was made, it was being discussed publicly and generally, and the possibility of some statutes being passed affecting the question must have been within the contemplation of the parties when they signed the contract. But they made no exception to cover such a possibility. Even were this not so, the first enactments became law long before the adjournment of the closing of the contract was had. At that time the April statutes were in existence, but notwithstanding, the defendant agreed that '' no present existing objections to title shall be considered cause for failure to take title.'' In other words, the provisions of the housing legislation passed in April were not to be grounds for refusal

to take title on the adjourned date. Evidently the defendant then was willing to take title notwithstanding the April legislation. And the parties must have contemplated the possibility of changes or amendments thereto. The September statutes did make a number of changes, but they did not affect the defendant's right under the contract in question or prevent its performance. The points emphasized by defendant are these: That the reasonableness of the rent, even though agreed upon, may be disputed and litigated. But this provision was also contained in the April statutes. There is a new rule of evidence in the September statutes making the rent presumptively unreasonable if it be greater than it was one year prior, but this affects no substantive right. Another complaint is that the landlord has to file a bill of particulars, and the case is supposed of a new landlord not knowing the particulars required to be stated in the bill and so being unable to file it he would be deprived of his right to recover rent. While the statute requires the bill to be filed, it does not seek to compel the impossible. If a new owner does not know the particulars required to be stated in the bill and cannot obtain them with reasonable diligence, a statement to that effect surely will suffice and he will not be prejudiced. Another alleged grievance is that summary proceedings have been abolished except in certain cases. Such proceedings are purely statutory and may be modified or repealed at any time. That changes in the law relating to such remedies is not a ground for the abrogation of a contract is decided by the cases already cited. And defendant further comments on the provision making it a misdemeanor for a landlord willfully to fail to furnish heat, etc., as agreed. This has nothing to do with

the title to the property. Besides, a similar provision was contained in the April statutes (Chap. 131).

Defendant contends that this case is similar in principle to *Anderson* v. *Steinway & Sons,* 178 App. Div. 507; affd., 221 N. Y. 639. That involved a contract made before the zoning regulations were adopted. By their adoption the property in question could not be used for the sole purpose for which it was being purchased, and so the courts held the purchaser should have relief. The *per curiam* memorandum in the Court of Appeals shows clearly that the decision was based solely upon the ground that both the contracting parties knew that the purchaser was taking the property only for a specific use, which was rendered impossible by the zoning regulations, and for that reason he was relieved. This decision is akin to the doctrine at law that subsequent illegality of the act contracted to be done excuses non-performance. Had the zoning regulations existed at the time the contract was made, the purchaser probably would have had to complete as he would be charged with notice of their existence and it would not be necessary to have them mentioned or excepted in the contract. *Lincoln Trust Co.* v. *Williams Building Corporation,* 229 N. Y. 313.

The case of *Gotthelf* v. *Stranahan,* 138 N. Y. 345, is also inapplicable. There, before the date for closing the contract, a large assessment was laid on the property. The property had not been benefited because the improvement for which the assessment was laid had not yet been made. Under the charter provisions affecting the property, assessments were laid before the improvements were made, and thereafter and before they were made the project might have been abandoned by the city. For these reasons, which seemingly involved the proposition that the

possibility of such assessment being laid was not in the contemplation of the parties when they signed the contract, equity refused to decree specific performance at the instance of the buyer. See the reference to this case in Pomeroy's Equity Jurisprudence, volume 5, section 2220.

The defendant had no right to refuse to take title because of the September enactments of the housing laws so the plaintiff is entitled to the judgment sought, with costs.

Judgment for plaintiff.